IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| James E. Sykes (TDCJ)No.2113759 | § | |
| & | § | |
| (TDCJ-ID) Jester III. Unit Inmates | § | |
| Jester III. Unit | § | |
| 3 Jester Rd. | § | |
| Richmond, TX  77406 | § | |
| PLAINTIFFS pro  se | § | |
| | § | |
| v. | § | Civil Action No._____ |
| | § | (Clerk will assign case number) |
| Lori Davis | § | |
| P.O. Box 99 | § | |
| Huntsville, TX  77340 | § | |
| | § | |
| Lonnie Townsend | § | |
| 3 Jester Rd. | § | |
| Richmond, TX  77406 | § | |
| | § | |
| Jester III. Unit Supervising | § | |
| Officers (Un-named) | § | |
| 3 Jester Rd. | § | |
| Richmond, TX  77406 | § | |
| | § | |
| Jester III. Unit Officer | § | |
| Staff (Un-named) | § | |
| 3 Jester Rd. | § | |
| Richmond, TX  77406 | § | |
| | § | |
| Sunday O. Aremu | § | |
| 3 Jester Rd. | § | |
| Richmond, TX  77406 | § | |
| | § | |
| Edgar Hulipas | § | |
| 3 Jester Rd. | § | |
| Richmond, TX  77406 | § | |

§   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §

(TDCJ-ID) JESTER III. UNIT INMATES CIVIL RIGHTS
COMPLAINT PURSUANT TO TITLE 28 U.S.C. §1331
BROUGHT UNDER TITLE 42 U.S.C. §1997j

§   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §   §

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, (TDCJ-ID) JESTER III. UNIT INMATES, proceeding pro se and files this their Civil Rights Complaint Pursuant to Title 28 U.S.C. §1331, they bring this Complaint under Title 42 U.S.C. §1997j.

## I. JURISDICTION

This is a Civil Rights Complaint being filed by a State Inmates for violations of their United States Constitutional Rights as well as violations of Federal (ADA) Laws. Pursuant to Title 28 U.S.C. §1331, a Federal Court shall hold original jurisdiction over the subject matter when it raises a question of Federal law violations.

The Defendants named in this suit are all employed by (TDCJ) and acted under color of State law while violating the Jester III. Unit inmates Constitutional Rights which makes this Federal Court hold jurisdiction over the parties in this case.

The Alleged violations are taking place in a prison unit in Richmond, Texas, which is listed in the Southern District of Texas, Houston Division, due to the location of the violations and parties this Court holds jurisdiction.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES

On May 7th 2020, Plaintiff James E. Sykes filed a step 1 grievance and listed at the top of the grievance 'EMERGENCY' this grievance has not been answered at this time. Plaintiff Sykes was interviewed by Sgt. Ross who was

told to talk to Sykes by Major Washington. Sgt. Ross told Sykes the grievance procedure was suspended on the unit and would not be available due to the COVID-19 Pandemic and the COVID-19 virus being on the Unit. The grievance staff would not be working and the grievance procedure would not re-open untill after the Units operation went back to normal.

Due to the immediate extreme danger factor this suit is based on and the obstruction of the grievance procedure being made by all the staff on the Jester III. Unit in blocking the inmates from using the grievance procedure which is leading to the inmates being blocked from exhausting their administrative remedies.

Pursuant to title 42 U.S.C. §1997e(b), The State can not move to dismiss prisoners suit if it failed to allow the inmates the opportunity or if staff obstructed the inmates from exhausting their administrative remedies.

due to these factors listed above this Court shall by all means deem the Jester III. Unit inmate grievance procedure unavailable in this suit.

### III. PARTIES TO SUIT

PLAINTIFFS: James E. Sykes & (TDCJ-ID) Jester III. Unit Inmates
                3 Jester Rd.
                Richmond, TX  77406

[At all times relevent to this case each Defendant was acting in their Official Capacity and under color of State law. All allegations made by the Plaintiffs herein this Civil Rights Complaint is made against each Defendant in their Official Capacity for their individual acts. All remedies sought by the Plaintiffs in this suit will be sought against the Defendants in their Official Capacities. Only remedies sought in this suit is injunctive remedies in which will protect the inmates safety on the Jester III. Unit.]

DEFENDANT #1: Lori Davis / (TDCJ) Director / P.O. Box 99 / Huntsville, TX
77430 / IN HER OFFICIAL CAPACITY FOR SUPERVISOR LIABILITY

This Defendant is responsible for the operations of (TDCJ), which includes
supervising and putting protective orders in place for the units to follow
to insure the saftey of staff and inmates within the jurisdiction of the Department
of Criminal Justice Division, (TDCJ). Around or about March 2020, Defendant
Davis did put protective measures in place for each individual unit(s) to
follow. Defendant Davis has failed to train and supervise Defendant Lonnie
Townsend who is the Jester III. Unit Senior  Warden and insure he was following
the orders she put in place as well as making sure he was inforcing his staff
on the Jester III. Unit to also follow the orders and (TDCJ) rules which are
put in place to insure the saftey of (TDCJ) staff and inmates.

By Defendant Davis's failure to train and supervise Defendant Townsend,
it has enabled Defendant Townsend to endanger the Jester III. Unit's staff
and inmate population.

Under superviser liability the superviser becomes injurious to the rules
and laws their subordinate staff violate when (1) they are aware of the violations
and ignored them or (2) if their failure to over see operations lead to violations
of rules or laws by their subordinate staff that they would have been caught
and corrected if proper supervision would have been present and sufficant
at the time of the violations.

By allowing her subordinate staff to disregard a known danger and putting
Unit staff and inmates into this known danger without taking any protected
measures to delete or lower the deadly risk violates the State of Texas and
the United States Constitution and delivers Cruel and Unusual Punishment.
Defendant Davis is also in violation of Texas and Federal (ADA) laws as well
as Texas Gross Negligence Laws.

DEFENDANT #2: Lonnie Townsend / Jester III. Unit Senior Warden / 3 Jester
Rd. / Richmond, TX  77406 / IN HIS OFFICIAL CAPACITY FOR SUPERVISER
LIABILITY & DELIBERATE INDIFFERENCE TO INMATES SAFTEY

Defendant Townsend is responsible for the operations of the Jester III.
Unit. Defendant Townsend is responsible for the Jester III. Unit's staff and
inmate population's saftey and well being. Defendant Townsend is responsible
for supervising all staff who work on the Jester III. Unit.

Defendant Lonnie Townsend is currently acting with Deliberate Indifference
to the staff and inmates of the Jester III. Unit's saftey. Defendant Townsend
is treating the current Jester III. Unit's "Medical Lock Down" due to the
COVID-19 Pandemic as an inconvenance instead of a very dangerous and deadly
medical situation. Defendant Townsend is currently putting the staff and inmates
in a known direct dander, instead of taking a deeper protected measure. A
protected measure was put in place to stop inmates movement and  inmates mixing
from other dorms to limit COVID-19 virus exposure and spread. Defendant Townsend
refuses to abide by the rules set forth by Defendant Davis governing the Medical
Lock Down of the Jester III. Unit.

Defendant Townsend is currently acting with Deliberate Indifference to the
Jester III. Unit's inmtes serious medical needs. Defendant Townsend is currently
putting terminaly ill inmtes in direct danger of COVID-19 by not following
and inforcing rules set in place for the unit to follow and is directly putting
these class of inmates in a known direct danger of contracting this deadly virus.

Defendant Townsend is failing to train and supervise his subordinate staff,
which is allowing and enabling his staff to violate clearly established laws
and (TDCJ) rules. These (TDCJ) rules are posted in the inmates dorms on a
bulliten board, which if staff follows these posted rules would protect the
Jester III. Unit's inmates  saftey. Defendant Townsend is currently failing to

train and supervise his subordinate staff which is enabeling his staff to violate clearly established (TDCJ) rules and clearly established Texas and Federal laws by allowing his staff to deny inmates the grievance procedure.

Defendant Townsend is violating clearly established Texas laws. Defendant Townsend is knowingly giving false information to the State of Texas (TDCJ). Defendant Townsend reported on April 29th 2020, that the Jester III. Unit had no inmates in "Medical Restrictive Housing" who were exposed to the virus. The Jester III. Unit had at that time 9 inmates on beds in the Jester III. Unit gym who were in "Medical Restrictive Housing" who were exposed to the virus at local hospitals and other units.

Defendant Townsend is violating clearly established (TDCJ) policies and Texas and Federal laws governing respite areas. As the Jester III. Unit inmates population become sick with the virus these inmates are being moved from the dorms into the inmates posted respite areas leaving inmates no way to escape the heat of their dorms as the inmates are being refused respite due to the areas being filled with these sick inmates and having no way for inmates to seek cool off areas safely without being exposed to this extremely deadly virus.

Defendant Townsend is currently in violation of the Jester III. Unit inmates Texas and United States Constitution of the First, Eighth, and Fourteenth Amendments, Defendant Townsend is also in violation of the Texas and Federal (ADA)Laws, and in violation of Texas Penal Codes and Gross Negligence Laws.

DEFENDANT#3: Jester III. Unit Supervising Staff (Un-named / Major, Captins, Shift Lt!s and Shift Sgt.'s/ 3 Jester Rd. / Richmond, TX  77406 IN THEIR OFFICIAL CAPACITIES FOR SUPERVISER LIABILITY AND FOR THEIR INDIVIDUAL ACTS OF DELIBERATE INDIFFERENCE

These Defendants are incharge of over seeing lower level staff who work the hallways and inmates dorms. They are to supervise these lower level staff and ensure the staff and inmates are abiding by (TDCJ) policy and they are also responsible for the staff and inmates saftey while they are on duty. These Defendants are ultimately responsible for the lower level operations on the unit such as, making sure inmates are fed, recieve their medications, ect., they are ultimately responsible for all inmate movement on the unit.

These supervising officers are failing to train and supervise their subordinate staff and they are intentionally allowing their staff to violate clearly established posted (TDCJ) policy and knowingly allowing their staff to put Jester III. Unit's inmates and staff at risk of their saftey and intentionally endangering the life of staff and inmates by refusing to follow the clearly posted (TDCJ) unit policy which is posted in the inmates dayrooms on the inmates bulliten boards.

These Posted policies that are deliberatly being violated are policies to help reduce the risk of the very deadly COVID-19 virus from being contracted and spread by the very terminaly ill inmates population of the Jester III. Unit.

By these supervisers Deliberate Indifference to this deadly riskis endangering staff and inmates saftey and well being. These supervisers are currently in violation of the Texas and United States Constitution, Texas and Federal (ADA) Laws and Texas Gross Negligence Laws by acting with Deliberate indifference to inmates serious medical needs by putting the terminaly ill inmate population at risk of contracting this deadly virus.

DEFENDANT #4: Jester III. Unit Officer Staff (Un-named) / Hallway and Inmate
              Dorm Officers / 3 Jester Rd. / Richmond, TX  77406 / IN THEIR
              OFFICIAL CAPACITY FOR DELIBERATE INDIFFERENCE OF INMATES SAFTEY

These Defendants are currently violating clearly established posted (TDCJ)

policies of the Jester III. Unit "Medical Lock Down". By the acts of these Defendants they are currently endangering the inmates lives and saftey.

the Defendants are getting inmates out of their dorms to work in the laundry, kitchen, and other places on the unit. These Defendants are putting the Jester III. Unit inmates and staff in direct danger by allowing these inmates workers to go in and out of every dorm on the unit which is spreading the virus from dorm to dorm. These Defendants are disregarding the clearly established and posted rules of the Jester III. Unit "Medical Lock Down" which states, "Inmate workers will be used but limited workers will be brought from the trusty camp." By These Defendants totaly disregarding these rules they are Deliberatly putting inmates and staff in a known danger and at a un-needed risk of this deadly virus.

These Defendants are acting with Deliberate Indifference to the saftey of the inmates as they them selves are going in and out of every dorm on the unit including dorms where inmates have tested positive for the COVID-19 virus. These Defendants are allowing 'SSI' workers to have run of the unit with no supervision which these inmates are being allowed and told to go in and out of every dorm on the unit and some of these inmates are not even waring mask.

These Defendants are also violating other parts of clearly established posted (TDCJ) rules of the Jester III. Unit "Medical Lock Down" as these rules state, "Only one housing area will be allowed out of their dorms for pillwindow, showers, and bandage change." These Defendants are currently violating these rules and causing an un-needed threat to inmates saftey as these Defendants are calling multiple dorms at one time and putting inmates in a cage where they sit shoulder to shoulder for sometimes hours at a time. Some of these inmates have positive virus cases on their dorms.

These Defendants are currently violating clearly established (TDCJ) policies Texas and Federal laws by not allowing and obstructing inmates access to grievance forms.

DEFENDANT #5: Sunday O.Aremu / Officer Co. V / Second Shift Hallway Officer /
                3 Jester Rd. / Richmond, TX.  77406 / IN HIS OFFICIAL CAPACITY
                FOR HIS INDIVIDUAL ACTS OF DELIBERATE INDIFFERENCE TO INMATES
                SAFTEY AND SERIOUS MEDICAL NEEDS

Defendant Aremu is acting with Deliberate Indifference to the Jester III.
Unit's inmate and staff saftey and putting the inmate population at great
risk by violating clearly established posted (TDCJ) policy which is currently
in place to insure the saftey of the Jester III. Unit inmates and staff. Defendant
Aremu is responsible for putting inmates and staff in direct danger of contracting
the COVID-19 virus as he puts several different dorms in the pillwindow, unit shower,
bandage change, and more, all at one time he puts and locks these inmates in a
cage where they sit shoulder to shoulder for hours at a time. Some of these
inmates come from dorms that have been exposed to this deadly virus which
in turn is causing unnesissary exposure and is directly against posted rules.

Defendant Aremu is currently in violation of the Jester III. Unit inmates
First, Eighth, and Fourteenth Amendment Rights, he is in violation of the
Texas Constitution, Texas and Federal (ADA) Laws, by Deliberately exposing terminaly
ill inmates to this deadly virus as he is also treating this Medical Pandemic
as an inconveniance instead of a very deadly medical situation. Defendant Aremu
is also in violation of Texas Gross Negligence Laws.

DEFENDANT #6: Edgar Hulipas / Jester III. Unit Medical Director / UTMB Medical
                Department / 3 Jester Rd. / Richmond, TX  77406 / IN HIS OFFICIAL
                CAPACITY FOR DELIBERATE INDIFFERENCE TO INMATES SERIOUS MEDICAL
                NEEDS AND THE DENIAL OF MEDICAL CARE

Defendant Hulipas is the Medical Director on the Jester III. Unit and the
Medical Doctor for the Jester III. Unit. His responsibility is to supervise
medical staff to ensure they are giving adequate health care and insuring the

saftey of the inmates. Defendant Hulipas is currently acting with Deliberate Indifference to the Jester III. Unit inmates serious ongoing medical needs. Inmates are sending request forms requesting to see a medical provider for various reasons. Some of these reasons would be classified as urgent, however, Defendant Hulipas is sending inmates their request forms back with his response which states, "The medical department is not seeing any offenders at this time unless its related to the COVID-19 virus, there will be no nursing visits at this time." This deliberate denial of medical services is dangerous as on the Jester III. Unit houses a very sick terminaly ill and old population that have very serious medical needs and by the denial of medical request filed by inmates when the officers refuse the inmate medical atention and tell these inmates to put in that request to see medical completely blocks the inmates from recieving medical care and their medical needs can become deadly in an instant where it could have been prevented only if a nurse went to the inmates dorm to see what the problem was.

Defendant Hulipas is currently in violation of the Texas and United States Constitution, Texas and Federal (ADA) Laws for the denial of medical care and Deliberate Indifference to Inmates serious medical needs. Defendant Hulipas is also currently in violation of Texas law for Medical Neglect & Mal Practice and Gross Negligence.

## IV. STATEMENT OF FACTS

1) Prior to the month of March 2020, COVID-19 was just begining to become a major threat to the United States. The United States found with time the most vulnerable people to the virus are older people and people with health conditions. After the United States Government realized the dangers of

this deadly virus, Counties and States went into "Medical Lock Downs" to protect individuals and to slow the spread of this deadly virus.

2) In the "Free World" people have the ability to protect them selves and can take needed precautions to do so. They have the ability to get needed supplies, such as food, masks, hand sanitizer, anti bacterial soap, and other PPE. They also have the ability to distance them selves from other people.

3) People who are in facilities "Inmates" do not have these abilities and are reliant upon prison staff "Officers" to provide these things for them. There is no possible way for inmates to distance them selves from each other at all. A failure for officers to provide inmates with mask, hand sanitizer, anti bacterial soap, gloves, and other PPE puts these inmates at extreme danger of contracting this deadly virus. A failure to stop inmate movement on a facility can spread this deadly virus very quickly and have a very deadly outcome in a facility as we have seen with numerous cases on these units already.

4) Inmates do not have the freedom and ability to go to a grocery store to so they have food, they again are reliant on officers to feed them meals that have the calories to keep them healthy and not force inmates to be without food for extended amount of time as this would constitute as Cruel and Unusual Punishment which the Texas and Federal Constitution prohibits.

5) The Jester III. Unit is located in Richmond, Texas. This Unit is classified as a medical Unit which houses wheel-chair bound inmates and houses the sickest inmate population in the State of Texas. A majority of these inmates are terminally ill inmates such as, Cancer, Lukemia, HIV, Hepititus C, Heart, ect., these inmates are housed on the Jester III. Unit for the heighten medical care they require and the Unit is located near hospitals. This class of inmates are extremely vulnerable to the deadly COVID-19 virus

and any of these inmates that contract this virus it will more than likely lead
to death. (TDCJ) officials have a responsibilty to provide as much protection
to these inmates as possible and not intentionaly expose these inmates
to any unnessisary risk of contracting this virus.

6) Prior to the middle of April 2020, inmates on the Jester III. Unit were
   not allowed to ware masks and if an inmate was cought waring a mask it
   was confiscated by the officers as contraband.

7) As the virus started getting worse a Windham School District Counslor who
   worked at the Jester Units got sick and tested positive for the virus.
   This was in early April 2020. Inmates who were attending programs were
   in contact with this Counselor. Due to this shortly after Warden Townsend
   issued a limited movement order for Jester III. Unit. The order was designed
   to limit the spread of the virus from inmate to inmate. The rules of this
   limited movement order was that one dorm at a time to be let in the inmate
   dinning hall "Chow Hall" and one dorm at a time in the pillwindow, shower
   and bandage change "Dressing Change" at medical department. Inmates were
   still not allowed to ware mask as was listed on the (TDCJ) web site.

8) Around the beginning of April 2020, some inmates got sick, they were housed
   in Shelter Housing and 16 dorm. SSI's were still required to go too the
   Shelter Housing and work directly on the dorms where inmates were sick
   and COVID-19 virus test were pending. 16 dorm was supposed to be quarantined
   also pending COVID-19 test, however, SSI's, laundry workers, and kitchen
   workers were still required to enter these said dorms without mask or PPE and
   deliver cloths, food, and clean the dorms, then the inmates at the end
   of their shift return to their own assigned dorms and possibly expose other
   inmates to this very deadly virus. While these dorms were on quarantine
   officer Sunday O. Aremu would pull these inmates out of their dorm and put

these inmates in the pill line and dressing change line with the rest of inmates throughout the unit and unnessisarely and deliberately indanger the rest of the inmates population and if they are positive for COVID-19 at the time it could spread the virus to other inmates.

9) (TDCJ) opend a web page marked "COVID-19 Medical Action Center" and (TDCJ) required all units in the State of Texas to report all inmates who are, pending COVID-19 test, report all negitive test, positive test, all inmates who are placed in medical restrictive housing, and medical isolation.

10) Officers such as the 2nd shift desk officer, Defendant Sunday O. Aremu, "This is the officer who controls all inmate movement on the Jester III. Unit after 2:00 PM untill 10:00 PM", Defendant Aremu is disregarding the deadly risk of this virus. Defendant Aremu is intentionaly refusing to follow the orders set forth by Defendant Townsend and Davis which are posted rules governing the Jester III. Unit Medical Lock Down. Defendant Aremu is putting 4 and 5 dormes at one time in the inmates "Chow Hall" paking inmates where the line to get their food tray was backed out the exit door and no inmates at this time were allowed to ware masks. Inmates were trying to talk to ranking officers but Defendant Aremu would scream at them and threaten to put them in seg if he did not leave the hallway immediatly. The inmates would ask him for grievances and he would refuse to give them grievances. Defendant Aremu would make comments like, "The Warden is at home and they could run the unit how they wanted to run it no matter what the Warden said." They Aremu was refurring to the Shift Lt's and Shift Sgt.'s.

11) On other shifts like first and 3rd shift, inmates were asking for grievances and the officers would tell the inmates they did not have any grievances since there were no grievance officers and the grievance procedure was suspended untill the COVID-19 Pandemic is over.

12) At the end of the first week in April 2020, Jester III. Unit started setting
up beds in its gymnasium to use as quarantine "Restrictive Housing"  for
inmates coming to the Jester III. Unit from other Units and local hospitals
that could have been exposed to the COVID-19 virus.

13) The Jester III. Unit gym has 2 gym workers that work in the gym 7 days
a week to pass out chemicals and mop buckets to the Unit's SSI's and there
is alot of inmates going in and out of the gym. Inmate property is also
kept in the locked cages and this also prodces lots of inmate traffic.
Inmates who send property out with their families at visitation or to mail
it home are also required to go through the property room at the gym and
this also produces alot of inmate traffic. There was no protected barrier
put in place in the gym to seperate these "Medical Restrictive Housing"
inmates from the rest of the Units population and these inmates were being
allowed to mix with inmates from the rest of the Units population. Defendant
Aremu would also allow these inmates to go to pillwindow so the medical
nurses would not have to go to the gym to hand out medication. This shows
all officials were treating it as an inconvenience instead of a deadly
medical situation. To put inmates on a unit that houses mostly terminally
ill inmates in the first place is an extremely dangerous move.

14) The Jester III. Unit Administration and / or Defendant Townsend was giving
false reports to the "COVID-19 Medical Action Center" as on April 29th 2020,
at 5:00 PM, the Center reported there were no inmates in "Medical Restrictive
Housing" or "Medical Isolation" on the Jester III. Unit. In fact there
were a total of (9) inmates in "Medical Restrictive Housing" in the Jester
III. Unit gym.

15) On April 29th at 5:00 PM it shows the Jester III. Unit was under a precautionary
Lock Down along with 39 other units throughout the State of Texas. This

was due to an employee who tested positive after she was found to be running
a fever when trying to come into the Unit. This employee had very close
contact with several inmates the day before and the day before that. This
was a major exposure of the inmates to the virus. Only the Unit was listed
as being on Lock Down but this was also false information given to the
"COVID-19 Medical Action Center". The Jester III. Unit inmates were still
being packed into the "Chow Hall", pillwindow, and cages at medical wating
for bandage changes. The Jester III. Unit was not actully Locked Down untill
(7) days later which allowed the inmates from every dorm mix for a whole (7)
days. The Unit was Locked down on May 4th 2020, at around 10:00 AM after
inmates started getting sick. Defendant Townsend waited for inmates to
get sick and allowed inmates to spread the virus after knowing some inmates
were exposed to the virus.

16) According to the (TDCJ) web site inmates on the Jester III. Unit were recieving
    mask, gloves, hand sanitizer, and other PPE since the begining of April
    2020. This is also false information given to the public by the Jester
    III. Unit administration and / or Defendant Townsend. Jester III. Unit
    inmates were not even allowed to ware masks untill mid April, and masks
    were not passed out to inmates until around April 20th 2020, and the inmates
    had to sign stating they recieved a mask. Inmates were not and still do
    not recieve gloves, hand sanitizer, or any other PPE, as the Defendants
    are misleading the public. The masks inmates due recieve are not medical
    mask, the masks inmates ware are made from a cheap thin material like the
    same material a cheap T-shirt is made from.

17) As more positive COVID-19 cases turn up in (TDCJ) in officers and inmates
    on other units through out the State Warden Townsend is Deliberately putting
    Jester III. Unit inmates at a greater risk and in more danger than need

be. Defendant Townsend is Allowing officers who work at Jester III. Unit
to also work at other prisons that have known positive cases at that prison.
Defendant Townsend is also allowing officers to come from other local prisons
who have positive cases and work at the Jester III,Unit which is spreading
the virus from unit to unit and exposing the sickest unit in Texas to the virus.

18) Defendant Townsend is also Deliberately putting Jester III. Unit inmates
in extreme danger by allowing other inmates who are coming from other units
with known confirmed cases at that unit to be directly housed into dorms
without requiring these inmates to go through (14) days of isolation first.
Resently two inmates who came from the hardest hit units in the State,
which is Beto Unit, and Estelle Unit were moved directly into 13 dorm without
going through any isolation at all. 13 Dorm along with 14, 15, and 16 dorm
houses wheel-chair bound inmates who are extremely ill and old which this
move by the Jester III. Unit administration was extremely dangerious and
put inmates at risk that was not needed and served no purpous other that
being an inconvenience for the administration to house the inmates coming
on to the unit in isolation for the (14) days.

19) On May 4th 2020, at around 10:00 AM Defendant Townsend put the Jester III.
Unit in a precautionary "Medical Lock Down" which was signed by Defendant
Townsend and Davis. Defendant Townsend had administration post the rules
governing the "Medical Lock Down" in all the inmates dorms on their bulletin
boards in their dayrooms. The rules  state as follows, "All inmates phone
calls are suspended, there will be no inmates allowed in the dayrooms,
the TV's will sty on but all inmtes will stay in their bunks. Sack meals
will be passed out to the inmates at their bunks, limited workers will
be brought from the trusty camp to fix sack meals." This never took place
there were never any trusty camp workers brought from the camp. Workers

were instead pulled from all different dorms from the Jester III. Unit.

20) On May 4th 2020, at around 11:30 AM, inmates were being pulled back out
of their dorms to work in the hallways, deliver laundry, and food in all
the inmates dorms. The Jester III. Unit again posted false information
as workers did not come from the trusty camp instead officers violated
clearly established posted (TDCJ) rules and by this they indangered Jester
III. Unit inmates safty and put them in a deadly situation as the officers
and Defendant Townsend are Deliberately allowing the virus to spread throughout
the Jester III. Unit.

21) On May 9th 2020, inmates on 7 dorm started becoming sick. A majority of
the kitchen workers come from 7 dorm who since May 4th 2020, were delivering
sack meals to all the inmates on the unit being allowed in and out of every dorm.

22) On May 9th 2020, an inmate from 7 dorm tested positive for COVID-19. The
workers who were from 7 dorm who were out working were told to go back
to their dorm and officers were told not to let anyone off that dorm. According
to the rules posted no inmates were supposed to be out of their dorms anyways.
The inmate who tested positive was taken to medical and transffered to
Oak Bend Hospital where he remans. Due to the clearly established rules
that are posted through out the unit that state workers will be brought
from the trusty camp but were not, officers Deliberately allowed these inmates
to transport the virus from dorm to dorm and indangering all the inmates
on the Jester III. Unit due to these officers treating this virus as an
inconvenience instead of a deadly threat that it has already poven to be.

23) Defendant Townsend is failing to protect the inmates on the Jester III. Unit
as this deadly virus is beginning to spread through out the unit. Defendant
Townsend is still allowing his subordinate staff to pull inmates out of
their dorms to work Deliberately allowing these inmates to go in and out
of every dorm and transport the virus from dorm to dorm. Defendant Townsend
is allowing his subordinate staff to violate clearly established and posted
rules of the medical Lock Down by Deliberately allowing the staff to put
multiple dorms into the pillwindow, unit shower, bandage change at medical

and allowing his staff to pack inmates shoulder to shoulder in a cage at medical. Some of these inmates are from dorms who have had positive cases and inmates who have been exposed to this deadly virus.

24) Defendant Townsend is also Deliberately putting the Jester III. Unit inmates at a deadly risk by allowing his subordinate staff who work on 6, 7, 8, 9 and 12 dorms which dorms that have and have been exposed to this deadly virus to enter dorms that have not been exposed and walk around in those dorms. This is putting these inmates who are not being exposed to the virus at an extremely unnessisary risk and exposure to this virus.

25) Defendant Townsend is failing to supervise his subordinate staff as Jester III. Unit is not recieving a proper diet or calorie count. On May 10th 2020, inmates recieved for lunch a clump of black beans and raisins. On May 12th 2020, inmates recieved for lunch one corndog, raisins, and a mintstick these meals are happening more and more as time goes on. Inmates who are allergetic to peanut butter are not being accommadated and are being ignored and they are unable to eat at several meal times or only able to eat half of the meal. A problem at times is also officers are given sack meals and will wait hours to pass them out sometimes the wait in between meals is 13 to 14 hours which creats problems for diebetics and also forces inmates to go hungry and officers make comments like "You shouldn't have become a prisoner or if you wouldn't have broke the law you could eat when you want." These officers the inmates it is their job to punish inmates for their wrong doings thats why the Judge sent the inmates to prison for the officers to punish them.

26) Due to the Deliberate Indifference of all the staff on Jester III. Unit and the disregard of clearly established (TDCJ) rules the Jester III. Unit inmates are becoming sick at a very fast pace, Inmates are being put in Jester III. Unit's gym, chaple, school house, and non contact visitation inorder to try and seperate these sick inmates from the rest of the population,

however, these sick inmates are still being called out by Defendant Aremu
to go to the pillwindow, bamdage change and showers with the rest of the
inmate population. These same inmates are being put in a cage at medical
with the rest of the population which is directly indangering inmates lives.

27) There is now becoming a whole new threat to the inmate population as the
inmates on Jester III. Unit becomes sicker and being moved to other locations
on the unit such as the chapel, school house, and non contact visitation
as these are the inmates population respite areas. Inmates are no being
refused by officers to go to cool off stations. Inmates who are housed
in very hot dorms are being refused "Respite" because Jester III. Unit
posted respite areas are being filled with sick inmates. This is possing
a new threat to inmates safety and lives as the Texas summer ramps up and
will soon be climbing into the 100 degrees mark, not only will this COVID-
19 virus be killing inmates on the Jester III. Unit, but, the heat related
deaths will also become a major factor of inmates safety and and the heat
related deaths on  the jester III. Unit will drasticly rise as these inmate
will be forced to endure the extreme heat with no escape.

                              CONCLUSION

This current "Medical Lock Down" the Jester III. Unit is under is being
treated as an inconvenience and officers are Deliberately putting inmates in
extreme danger. The "Medical Lock Down" is being treated by officers as more
like a punishment "Lock Down" that a "Medical Lock Down" as all inmates privileges
have been suspended they say "For The Inmates safety", however, the most dangerious
acts are still being commited by the officers and unit administration on the
Jester III. Unit.

There  is  no difference in allowing inmatesworkers the run of the unit
transporting the virus from dorm to dorm than just opening up the "Chow Hall"

and allowing inmates to eat hot meals. The most dangerous acts are putting inmates from dorms who have been exposed to COVID-19 packed in cages at medical for pillwindow and bandage changes or paking inmates from different dorms in the showers. Inmates are not allowed in the dayrooms or allowed to use the phones to keep inmates from gathering in groups, however, the danger is not in individual dorms as much as it is mixing dorms and which this is taking place as the officers are treating it as an inconvenience for the nurses to deliver medication to the inmates dorms so they instead put inmates in very large groups to recieve medication and other services. It is an inconvenience for the officers to pass out sack meals to the inmate bunks so they allow inmates to due it for them off other dorms which is way more dangerious that allowing inmates in the dayrooms. Inmates get written up by officers if they are cought in the dayrooms, however, when there is no inmate workers available to pass out sack meals the officers will call all inmates to the dayrooms causing very large groups of inmates in the dayrooms for the officers convenience which is against the clearly established rules that officers enforce unless it causes the officers an inconvenience.

## RELIEF SOUGHT

The Plaintiffs are requesting the following injunctive relief to be imposed against the Defendant, the relief sought by Plaintiffs are rules already set in place and the Defendants are already supposed to be abiding by them. Other rules listed that are not already established is listed to protect inmates safety.

1) The Court to issue an emergency order, ordering an immediate investigation of these allegations made in this complaint. The Court to send one of its Court investigators to the Jester III. Unit,

2) The Court to order the Defendants named in this suit to immediately answer to the allegations made by the Plaintiffs,

3) The Court to order the Defendants to immediately completely "Lock Down" the Jester III. Unit and stop all inmate movement on the Unit, The Court to order the Defendants not to use any inmate worker on the unit at all.

4) Only allow one dorm at a time into the unit showers, while these inmates are off their dorms and are moving in the hallways for the officers to put up a protected barrier at the bars of every dorm. A barrier like sheets or clear tarp 6 to 8 feet high to prevent spread of the virus,

5) The Court to order medical personnel to deliver to the inmates dorms needed medication, to include but not limit to: insulin, dressing changes, medications, and all shots for cancer patients. Order all inmtes request will be answered and a nurse will be sent to the inmates dorms to evaluate the inmates needs and not block any inmates the access to a doctor if the issues are outside the expertise of the nursing staff.

6) Order for keeping each officer at one work station to limit the transport of the virus between dorms. The officers to keep their movement in the inmates dorms to a minimum and the officers to utilize the cat walks above the inmates dorms to perform security checks instead of the officer actually being in the dorm with the inmates to limit the exposure of the virus. Officers who are working the inmates dorms are the ones to deliver sack meals and cloths to the inmates bunks the officer my use an inmate assistance of only an inmate from the same dorm they are housed in, in order to limit the spread of this virus.

7) Due to this very deadly virus being on the Jester III. Unit and the inmates having no safe way to escape the Texas heat without endangering the rest of the inmate population , the Plaintiffs are requesting the Court order Jester III. Unit to install temperary A/C units throughout the whole unit until the inmates can have access to respite areas safely.

The inmates who sign the Verification / Declaration below are all swearing to have personal knowledge of the facts and the events which are taking place on the Jester III. Unit and are listed herein this suit. Some inmates who have signed this suit have limited personal knowledge of the facts as some facts listed took place in other locations on the unit.

## VERIFICATION / DECLARATION

Pursuant to Title 28 U.S.C. §1746, I James E. Sykes and (TDCJ-ID) Jester III. Unit Inmates listed below hereby verify and declare under penalty of perjury under the laws of the United States of America that the foregoing facts listed herein this civil rights complaint which also acts as all Inmates population unsworn declaration is true and correct. Executed on this the 18th day of May 2020.

X. _____
James E. Sykes
(TDCJ)No.2113759

X. _____
Andy H. Morrison
(TDCJ)No.2047558

X. _____
Luis A. Munoz
(TDCJ)No.2216033

X. _____
Michael Harper
(TDCJ)No.645386

X. _____
Chad W. Hightower
(TDCJ)No.2283348

X. _____
Thomas W. Harris
(TDCJ)No.2286547

X. _____
Darrell R. Speck
(TDCJ)No.2133282

X. _____
Craig Hoopii
(TDCJ)no.1568827

X. _____
Dalton R. Christopher
(TDCJ)No.1005668

X. _____
Ben Anthony
(TDCJ)No.1448161

X. _____
Matthew D. Percifull
(TDCJ)No.2174950

X. _____
Larry R. Dewvall
(TDCJ)No.1903877

X. _____
Carl W. Pressley
(TDCJ)No.1925562

X. _____
Samuel M. Lopez
(TDCJ)No.2267576

X. _____
Howard L.Jones
(TDCJ)No.2169695

X. _____
Thomas P. Bryce
(TDCJ)No.230694

X. _____
Pablo Banda
(TDCJ)No.21577

X. _____
Bud A Lee
(TDCJ)No.2205851

X. _____
Craig D. Davison
(TDCJ)No.2260375

X. _____
Porfirio Vargas
(TDCJ)No.1877631

X. _____
Brian J. Bevelhymer
(TDCJ)No.2266349

X. _____
Joseph L. Mayonga
(TDCJ)No.2174229

X. _____
Marshall T. Ward
(TDCJ)No.2205270

X. _____
Kent Kruger
(TDCJ)No.1035366

X. _____
Rob H. Wirkkala
(TDCJ)No.794327

X. _____
Joseph B. Cooper
(TDCJ)No.1938617